NOTICE

REGARDING THE ACQUISITION OF FOUR U.S. WIND FARM PROJECT
COMPANIES BY RALLS CORPORATION

Pursuant to Subsection (f) of the Order issued by the President of the United States on September 28, 2012 (the Order) and Section 721 of the Defense Production Act of 1950, as amended (section 721), 50 U.S.C. App. 2170, notice is hereby given that Ralls Corporation (Ralls) has tendered to Terna Energy USA Holding Corporation (Terna) notice that the transaction resulting in the acquisition of the Project Companies, as defined in the Order, and their assets by the Companies, as defined in the Order, or Mr. Jialing Wu or Mr. Dawei Duan, is prohibited and void ab initio, and in consequence ownership of all interests in the Companies and their assets remains with Terna.

Dated:          December 19, 2012


Signature:      _____

                Hon. Steven S. Honigman
                Attorney for Ralls Corporation and the Sany Group

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Robert Weigel
Direct: +1 212.351.3845
Fax: +1 212.351.5236
RWeigel@gibsondunn.com

December 24, 2012

VIA FACSIMILE, ELECTRONIC MAIL, AND U.S. MAIL

John P. MacNaughton
Morris, Manning & Martin
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326-1044
Facsimile: (404) 365-9532
Email: jpm@mmmlaw.com

Re:   Notice of Event of Default and Reservation of Rights

Dear Mr. MacNaughton:

We represent Terna Energy USA Holding Corporation ("Terna" or the "Seller"). Reference is made to the (i) Master Wind Projects Membership Interests Purchase Agreement dated as of February 28, 2012 (the "MIPSA"); (ii) Guarantee Agreements dated as of February 28, 2012 (the "Guarantee Agreements"); and (iii) Security Agreements dated as of March 16, 2012 (the "Security Agreements," and collectively with the MIPSA and Guarantee Agreements, the "Agreements") entered into by and among Intelligent Wind Energy, LLC (the "Purchaser"), Ralls Corporation, Ralls Wind Farm, LLC (the "Guarantors"), and Terna. All capitalized terms used but not defined herein shall have the meanings assigned to them in the MIPSA.

Purchaser and Guarantors are hereby notified that their payment obligations pursuant to Section 2.2(a) of the MIPSA matured as of December 21, 2012, and no payment has been received by the Seller. The failure to make the payment referenced in Section 2.2(a)(iii) constitutes a default under the MIPSA. This payment obligation is guaranteed and secured pursuant to the Guarantee Agreements and Security Agreements referenced above. Purchaser and Guarantors are also hereby notified that, pursuant to Section 2.6 of the MIPSA, if the payment referenced in Section 2.2(a)(iii) is not made within five (5) Business Days of the date on which payment was due, interest shall accrue on the unpaid amount at the rate of eighteen percent (18%) per annum from December 21, 2012 until the date the payment is received.

Seller hereby demands payment immediately. As a result of the occurrence of the Purchaser and Guarantors' payment default, Seller is entitled to exercise its rights and remedies under

# GIBSON DUNN

December 24, 2012
Page 2

the Agreements.  Specifically, if Seller does not receive payment within fourteen (14) days, Seller expects to immediately proceed with the process of selling its collateral in a commercially reasonable manner pursuant to its rights under the Security Agreements. Purchaser and Guarantors are hereby notified that, pursuant to Section 18(b) of the Security Agreements, Purchaser and Guarantors (or "Grantors" under the Security Agreements) are required to pay to Seller (or "Secured Party" under the Security Agreements) "any and all claims, damages, losses, liabilities, and expenses (including, without limitation, reasonable fees and expenses of counsel)," which Seller incurs in connection with enforcement of the Security Agreements.  Seller hereby expressly reserves all rights, powers and privileges to pursue any of its rights or remedies under the Agreements and any other right or remedy available to Seller at law or in equity.

Please contact the undersigned with any questions.

Sincerely,

Robert Weigel

cc (via Facsimile and U.S. Mail):

Intelligent Wind Energy, LLC
c/o Xiaolin Zhang
11413 Ashbourne Hall Road
Charlotte, NC 28277
Facsimile:  (704) 900-2005

Ralls Corporation
Ralls Wind Farm, LLC
c/o Jialiang Wu
318 Cooper Circle
Peachtree City, GA 30269
Facsimile:  (770) 631-7731

101428230.2



January 3, 2013

**By Electronic Mail**

Aimen N. Mir
CFIUS Staff Chair
Department of the Treasury
Washington, DC 20220

      Re:   *Ralls Corporation*, CFIUS Case 12-044

Dear Mr. Mir:

      This Firm, along with Hon. Steven S. Honigman and Tim Xia, represents Ralls Corporation (Ralls) in the above-referenced matter. Please find enclosed the latest letter from Ralls to Terna Energy USA Holding Corporation (Terna), responding to Terna's December 24, 2012 assertion that Ralls is in default of the Master Wind Projects Membership Interests Purchase Agreement (MIPSA) transferring from Terna to Ralls ownership of the Project Companies defined in the President's Order dated September 28, 2012. In its letter, Ralls reiterates its longstanding position that the MIPSA is illegal and void *ab initio* because of the Order's prohibition of the Terna-Ralls transaction and that, consequently, ownership of all interests in the Project Companies and their assets remains with Terna.

      Ralls has repeatedly communicated this position to Terna. It first did so by letter dated October 2, 2012. After Terna rejected this position on October 10, Ralls informed CFIUS on October 11 of Terna's resistance and asked CFIUS for clarification as to the meaning and effect of the Order concerning reversion of ownership of the Project Companies and their assets to Terna. In its November 1 response, CFIUS did not disagree with Ralls's position; instead, CFIUS stated its belief that the Order is "plain on its face" and its expectation that its terms would be effectuated. Ralls conveyed this information to Terna by letter dated November 14 and reiterated its position that the transfer of the Project Companies from Terna to Ralls is illegal and void *ab initio* as a result of the Order. Terna provided no response. By letter dated November 30, Ralls advised Terna that the Government had asserted in litigation with Ralls that the President "has the authority to insure that the *status quo ante* is restored," again supporting Ralls's position that the MIPSA is illegal and void *ab initio* and that ownership of the Project Companies remains with Terna. Again, Terna provided no response. Almost a month later, on December 24, 2012, Terna asserted that Ralls is in default of the MIPSA and that, accordingly, Terna is entitled to take possession of and sell certain collateral, including membership interests in the Project Companies. As indicated in the enclosed letter, Ralls rejects this contention, which is inconsistent with the Order and the Government's own litigation position.

      As the foregoing illustrates, we disagree with Ms. Robin Epstein's email of December 26, 2012, that Ralls "will be in violation of the President's order as of December 28, 2012." As early as October 3, 2012, Ralls has advised CFIUS that because the Order prohibited the transaction between Ralls and Terna, the transaction is illegal and void *ab initio* and ownership

of the Project Companies and their assets duly remains with Terna. As recently as December 19, 2012, moreover, we notified CFIUS that Ralls tendered to Terna notice that the transaction resulting in the acquisition of the Project Companies is prohibited and void *ab initio*, and that ownership of all interests in the Project Companies and their assets thus remains with Terna.

The Government's assertions during litigation support Ralls's position that Terna retains ownership of the Project Companies and their assets as a result of the Order. The Government has contended that absent CFIUS review and approval—which did not occur with respect to the Terna-Ralls transaction—a foreign purchaser does not acquire a "legitimate" property interest in the purchased property. *See* Defs.' Mem. In Support of Mot. to Dismiss 26-27; *see also* Defs.' Reply In Support of Their Mot. to Dismiss 18-19 ("Ralls had no legitimate claim of entitlement in any assets that it sought to acquire after forgoing review through the CFIUS process, and thus no property interest protected by the due process clause accrued to it."). As noted, the Government also cited the President's "authority to insure that the *status quo ante* is restored, and to insure that the foreign party does not … gain the benefit of assets that it should not have acquired in the first place." Reply at 15. And at oral argument on the motion to dismiss, the government's counsel unequivocally stated that any property interests Ralls ostensibly acquired from Terna via the MIPSA "are revocable contingent subject to the President's discretion, and therefore do not amount to a property interest." Transcript 20:8-10 (Nov. 28, 2012). Ralls disagrees with these litigation assertions, but they are consistent with the Order's voiding the Terna-Ralls transaction *ab initio* and returning the Project Companies and their assets to Terna.

As we have consistently informed CFIUS since the issuance of the Order, Ralls has undertaken in good faith to comply with the Order even as Ralls has sought judicial review of its propriety and legality. If Terna continues to resist the prohibition of the Terna-Ralls transaction and initiates collateral sale proceedings or takes other action that is inconsistent with the Order, Ralls will take appropriate action and, if necessary, call upon the Government to repeat its consistent litigation position that the transaction is illegal and void *ab initio* following the Order.

Very truly yours,

Viet D. Dinh

Enclosure

cc:   Tim Xia
      Hon. Steven S. Honigman

# MORRIS, MANNING & MARTIN

### A LIMITED LIABILITY PARTNERSHIP

WASHINGTON, D.C. OFFICE
**MORRIS, MANNING & MARTIN, LLP**
1333 H Street, N.W., Suite 820
WASHINGTON, DC  20005
TELEPHONE 202 408-5153
FACSIMILE 202 408-5146

ATTORNEYS AT LAW
1600 ATLANTA FINANCIAL CENTER
3343 PEACHTREE ROAD, N.E.

**ATLANTA, GEORGIA 30326-1044**
TELEPHONE 404 233-7000
FACSIMILE 404 365-9532

RALEIGH-DURHAM, NOR TH CAROLINA OFFICE
**MORRIS, MANNING & MARTIN, LLP**
Research Triangle Park
1000 Park 40 Plaza, Suite 350
DURHAM, NORTH CAROLINA  27713
TELEPHONE 919 806-2969
FACSIMILE 919 806-2057

SAVANNAH, GEORGIA OFFICE
**MORRIS, MANNING & MARTIN, LLP**
24 Drayton Street, Suite 712
SAVANNAH, GEORGIA  31401
TELEPHONE 912 232-7182
FACSIMILE 912 232-7184

JOHN P. MACNAUGHTON
DIRECT DIAL 404 504-7689
E-MAIL JPM@MMMLAW.COM

January 3, 2013

***VIA U.S. MAIL AND EMAIL (RWeigel@gibsondunn.com)***

Robert Weigel, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York  10166-0193

      Re:     <u>Terna/Ralls Transaction — Notice of Default</u>

Dear Mr. Weigel:

      This letter is in response to your December 24, 2012 letter to me regarding the Master Wind Projects Membership Interests Purchase Agreement dated February 28, 2012 (the "MIPSA"), Guarantee Agreements dated February 28, 2012 (the "Guarantee Agreements"), and Security Agreements dated March 16, 2012 (the "Security Agreements," and collectively with the MIPSA and Guarantee Agreements, the "Agreements"), entered into by and among Intelligent Wind Energy, LLC ("IWE"), Ralls Corporation, Ralls Wind Farm, LLC ("Ralls"), and Terna Energy USA Holding Corporation ("Terna").

      In your letter, you state that the "failure" by IWE and Ralls "to make the payment referenced in Section 2.2(a)(iii)" of the MIPSA as of December 21, 2012 "constitutes a default under the MIPSA."  You demanded such payment and added that because of the "payment default," Terna is "entitled to exercise its rights and remedies under the Agreements," including, specifically, "immediately proceed[ing] with the process of selling its collateral in a commercially reasonable manner pursuant to its rights under the Security Agreements" if Terna does not receive payment within fourteen (14) days.

      Ralls disagrees with the positions outlined in your letter.  As Ralls has repeatedly informed Terna — by letters dated October 2, November 14, and November 30, 2012 — on September 28, 2012, President Obama ordered that the transaction resulting in the transfer of Lower Ridge Windfarm, LLC, High Plateau Windfarm, LLC, Mule Hollow Windfarm, LLC, and Pine City Windfarm, LLC (collectively, the "Project Companies") from Terna to Ralls is prohibited.  The President's Order renders the MIPSA illegal and void *ab initio*; consequently, ownership of the Project Companies remains with Terna, and Terna is not entitled to the payment referenced in your December 24 letter.  Moreover, neither Ralls nor IWE is in default with respect to any of the Agreements.  Because Terna is not entitled to any further payment and

MORRIS, MANNING & MARTIN
A LIMITED LIABILITY PARTNERSHIP

Robert Weigel, Esq.
January 3, 2013
Page 2

neither Ralls nor IWE is in default, Terna has no grounds for proceeding with any sale of collateral pursuant to the Security Agreements.

I note further that under Section 22 of the Security Agreements, the "pledge and security interest granted hereunder shall terminate automatically … and all rights to the Collateral shall revert to the Grantor" upon "termination of the MIPSA." The President's Order of September 28, 2012 renders the MIPSA illegal and void *ab initio*, thereby terminating the MIPSA. As such, any security interest under the Security Agreements has automatically terminated, and all rights to the collateral have reverted to the Grantors thereunder.

Finally, to the extent the MIPSA retains any validity, I note that Terna may have violated Section 5.4 of the MIPSA, under which Terna represents that it is the "sole owner, legally, beneficially and of record" of membership interests in the Project Companies, and that "no Person has any right, title, interest or claim … against [Terna] in or to any Project Company." In litigation with Ralls, the federal government has asserted that a foreign purchaser of an American business has no valid property interest in the purchased property absent review and approval by the Committee on Foreign Investment in the United States. It is Ralls's understanding that Terna's purchase of the Project Companies from Oregon Windfarms, LLC did not undergo Committee review or receive Committee approval, despite falling under Committee jurisdiction by reason of the ownership of Terna by Terna Energy SA, a Greek company. Accordingly, if the federal government's litigation position is correct, Oregon Windfarms, LLC retains a "right, title, [or] interest" to the Project Companies. Further, Terna's failure to satisfy Section 5.4 results in the failure of Section 3.2(a) ("Representations and Warranties"), thereby relieving any further "obligations of Purchaser to make any payments toward the Purchase Price," MIPSA § 3.1, including the payment you have demanded.

Ralls reserves all rights available under law, including seeking immediate injunctive relief should Terna proceed with a sale of collateral.

Very truly yours,

MORRIS, MANNING & MARTIN, L.L.P.

John P. MacNaughton

JPM:wew

# MORRIS, MANNING & MARTIN

A LIMITED LIABILITY PARTNERSHIP

<table>
<tr>
<td>WASHINGTON, D.C. OFFICE<br><br>MORRIS, MANNING & MARTIN, LLP<br>1333 H Street, N.W., Suite 820<br>WASHINGTON, DC 20005<br>TELEPHONE 202 408-5153<br>FACSIMILE 202 408-5146</td>
<td>ATTORNEYS AT LAW<br>1600 ATLANTA FINANCIAL CENTER<br>3343 PEACHTREE ROAD, N.E.<br><br>**ATLANTA, GEORGIA 30326-1044**<br>TELEPHONE 404 233-7000<br>FACSIMILE 404 365-9532</td>
<td>RALEIGH-DURHAM, NORTH CAROLINA OFFICE<br><br>MORRIS, MANNING & MARTIN, LLP<br>Research Triangle Park<br>1000 Park 40 Plaza, Suite 350<br>DURHAM, NORTH CAROLINA  27713<br>TELEPHONE 919 806-2969<br>FACSIMILE 919 806-2057<br><br>SAVANNAH, GEORGIA OFFICE<br><br>MORRIS, MANNING & MARTIN, LLP<br>24 Drayton Street, Suite 712<br>SAVANNAH, GEORGIA  31401<br>TELEPHONE 912 232-7182<br>FACSIMILE 912 232-7184</td>
</tr>
</table>

JOHN P. MacNAUGHTON
DIRECT DIAL 404 504-7689
E-MAIL JPM@MMMLAW.COM

January 3, 2013

***VIA U.S. MAIL AND EMAIL (RWeigel@gibsondunn.com)***

Robert Weigel, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York  10166-0193

   Re:  Terna/Ralls Transaction — Notice of Default

Dear Mr. Weigel:

   This letter is in response to your December 24, 2012 letter to me regarding the Master Wind Projects Membership Interests Purchase Agreement dated February 28, 2012 (the "MIPSA"), Guarantee Agreements dated February 28, 2012 (the "Guarantee Agreements"), and Security Agreements dated March 16, 2012 (the "Security Agreements," and collectively with the MIPSA and Guarantee Agreements, the "Agreements"), entered into by and among Intelligent Wind Energy, LLC ("IWE"), Ralls Corporation, Ralls Wind Farm, LLC ("Ralls"), and Terna Energy USA Holding Corporation ("Terna").

   In your letter, you state that the "failure" by IWE and Ralls "to make the payment referenced in Section 2.2(a)(iii)" of the MIPSA as of December 21, 2012 "constitutes a default under the MIPSA."  You demanded such payment and added that because of the "payment default," Terna is "entitled to exercise its rights and remedies under the Agreements," including, specifically, "immediately proceed[ing] with the process of selling its collateral in a commercially reasonable manner pursuant to its rights under the Security Agreements" if Terna does not receive payment within fourteen (14) days.

   Ralls disagrees with the positions outlined in your letter.  As Ralls has repeatedly informed Terna — by letters dated October 2, November 14, and November 30, 2012 — on September 28, 2012, President Obama ordered that the transaction resulting in the transfer of Lower Ridge Windfarm, LLC, High Plateau Windfarm, LLC, Mule Hollow Windfarm, LLC, and Pine City Windfarm, LLC (collectively, the "Project Companies") from Terna to Ralls is prohibited.  The President's Order renders the MIPSA illegal and void *ab initio*; consequently, ownership of the Project Companies remains with Terna, and Terna is not entitled to the payment referenced in your December 24 letter.  Moreover, neither Ralls nor IWE is in default with respect to any of the Agreements.  Because Terna is not entitled to any further payment and

MORRIS, MANNING & MARTIN
A LIMITED LIABILITY PARTNERSHIP

Robert Weigel, Esq.
January 3, 2013
Page 2

neither Ralls nor IWE is in default, Terna has no grounds for proceeding with any sale of collateral pursuant to the Security Agreements.

I note further that under Section 22 of the Security Agreements, the "pledge and security interest granted hereunder shall terminate automatically … and all rights to the Collateral shall revert to the Grantor" upon "termination of the MIPSA."  The President's Order of September 28, 2012 renders the MIPSA illegal and void *ab initio*, thereby terminating the MIPSA.  As such, any security interest under the Security Agreements has automatically terminated, and all rights to the collateral have reverted to the Grantors thereunder.

Finally, to the extent the MIPSA retains any validity, I note that Terna may have violated Section 5.4 of the MIPSA, under which Terna represents that it is the "sole owner, legally, beneficially and of record" of membership interests in the Project Companies, and that "no Person has any right, title, interest or claim … against [Terna] in or to any Project Company."  In litigation with Ralls, the federal government has asserted that a foreign purchaser of an American business has no valid property interest in the purchased property absent review and approval by the Committee on Foreign Investment in the United States.  It is Ralls's understanding that Terna's purchase of the Project Companies from Oregon Windfarms, LLC did not undergo Committee review or receive Committee approval, despite falling under Committee jurisdiction by reason of the ownership of Terna by Terna Energy SA, a Greek company.  Accordingly, if the federal government's litigation position is correct, Oregon Windfarms, LLC retains a "right, title, [or] interest" to the Project Companies.  Further, Terna's failure to satisfy Section 5.4 results in the failure of Section 3.2(a) ("Representations and Warranties"), thereby relieving any further "obligations of Purchaser to make any payments toward the Purchase Price," MIPSA § 3.1, including the payment you have demanded.

Ralls reserves all rights available under law, including seeking immediate injunctive relief should Terna proceed with a sale of collateral.

Very truly yours,

MORRIS, MANNING & MARTIN, L.L.P.

John P. MacNaughton

JPM:wew

7796107 v01



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

JAN 0 4 2013

Steven S. Honigman
500 East 77th Street
New York, New York 10162

Viet Dinh
Bancroft, PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036

Re: <u>CFIUS Case 12-44</u>

Dear Messrs. Honigman and Dinh:

On December 19, 2012, Ralls submitted what it described as a notification to CFIUS under
subsection (f) of the Order issued by the President on September 28, 2012 (the Order) that Ralls
has tendered to Terna Energy USA Holding Corporation (Terna) notice that, in its view, the
transaction between Terna and Ralls is void *ab initio* and, in consequence, ownership of all
interests in the Project Companies and their assets remains with Terna. On December 24, 2012,
Ralls notified CFIUS that Terna responded with a Notice of Event of Default and Reservation of
Rights under the agreement between Terna and Ralls.

Until there is a proposed transaction involving a transferee that can demonstrate a willingness
and ability to support compliance with the Order, as provided in paragraph 2(f)(iii) of the Order,
there is no basis for CFIUS to respond to Ralls's submission of December 19, 2012.  To the
extent that a response to Ralls's submission of December 19, 2012, is deemed to be required,
CFIUS provisionally objects to the notice, given that, among other things, there is no evidence
that Terna is willing or able to support compliance with the Order.  Such provisional objection is
without prejudice to a new notice with respect to a recipient or buyer that is willing and able to
support compliance with the Order.  Further, such provisional objection does not extend the
90-day deadline for Ralls to comply with the divestment requirement in subsection 1(b) of the
Order.  As this 90-day deadline has now expired, Ralls is in violation of the Order.  CFIUS
reserves all of its rights to fully enforce the terms of the Order, including but not limited to the
requirement that Ralls divest itself of the Project Companies.

Sincerely,

W. Charlie Phelps
Acting CFIUS Staff Chair

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Robert Weigel
Direct: +1 212.351.3845
Fax: +1 212.351.5236
RWeigel@gibsondunn.com

January 8, 2013

<u>VIA ELECTRONIC MAIL</u>

John P. MacNaughton
Morris, Manning & Martin
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326-1044
Facsimile:  (404) 365-9532
Email: jpm@mmmlaw.com

Re:    <u>Terna/Ralls Transaction</u>

Dear Mr. MacNaughton:

As you know, we represent Terna Energy USA Holding Corporation.  I write in response to your letter dated January 3, 2013.  The defined terms used herein have the meanings assigned to them in our December 24, 2012 Notice.

As our client informed you in its letter of October 10, 2012, there is no legal basis for your claim that the MIPSA is illegal and void *ab initio*.  Upon execution of the MIPSA, Terna transferred ownership of the Project to IWE, a Delaware limited liability company, which subsequently transferred ownership to Ralls.  All parties have acted, and continue to act, in accordance with the fact that Ralls is the current owner of membership interests in the Project Companies.  As there has been no termination of the MIPSA, the Security and Guarantee Agreements remain in effect as well.

Given that your clients have defaulted on their obligations pursuant to the MIPSA, Guarantee Agreements, and Security Agreements, our clients intend to exercise their rights as provided for by those same Agreements.

Sincerely,

Robert Weigel

101436957.1