**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| RALLS CORPORATION, ) | |
| ) | |
| *Plaintiff*, ) | |
| v. ) | Case No. 13-117 |
| ) | |
| TERNA ENERGY USA HOLDING ) | |
| CORPORATION, ) | |
| ) | |
| *Defendant*. ) | |

---

**PLAINTIFF'S BRIEF ON JURISDICTION AND VENUE IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

Plaintiff Ralls Corporation ("Ralls") provides this response to the Court's January 29, 2013 request for briefing by the close of day concerning subject matter jurisdiction, personal jurisdiction, and venue in the instant case. Each of these requirements is satisfied.

**I.     Subject Matter Jurisdiction**

This Court has federal-question jurisdiction over this case. Federal district courts have jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Supreme Court has held that federal-question jurisdiction exists under 28 U.S.C. § 1331 if "a well-pleaded complaint establishes *either* that federal law creates the cause of action *or* that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983) (emphases added). To be sure, federal-question jurisdiction is "invoked by and large" by plaintiffs pleading the first of these options—"a cause of action created by federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Manufacturing*, 545 U.S. 308, 312 (2005). But the second of these options is "another longstanding, if less

frequently encountered, variety of federal 'arising under' jurisdiction," pursuant to which federal-question jurisdiction "will lie over state-law claims that implicate significant federal issues." *Id.* (citing *Hopkins v. Walker*, 244 U.S. 486 (1917), and *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921)). This doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Id.*

That "longstanding" doctrine applies here and assures the Court of subject-matter jurisdiction. While Defendant Terna Energy USA Holding Corporation ("Terna") would like to characterize this case as a garden-variety state-law contract dispute, it is not. Ralls does contend that certain agreements between the parties are unenforceable as a matter of New York state law, but it is *federal law* that renders those agreements unenforceable—specifically, an Executive Order by President Barack Obama issued pursuant to Section 721 of the Defense Production Act of 1950, as amended, 50 U.S.C. app. § 2170 *et seq.* Ralls contends that the President's Order, which "prohibits" the transaction, renders the transaction and the underlying agreements void *ab initio*. Terna disagrees with that interpretation of the President's Order and offers its own interpretation—citing, for example, other provisions of the President's Order during the January 29, 2013 conference call with the Court in support of that interpretation. Whatever the answer to the question of the proper construction of the President's Order and its effect on the underlying transaction, those are distinctly questions of *federal* law—they require interpretation of the President's Order and the federal statute purportedly authorizing it. Not to mention, these federal questions are logically antecedent to any other issues in the case; if, for example, the Court were ultimately to agree on the merits with Terna's construction of the President's Order, there will be no need at all to address supplemental matters of state contract law. In all events, the

2

interpretation and determination of the legal effect of an order of the President of the United States plainly "implicate[s] significant federal issues," and the case accordingly "turn[s] on substantial questions of federal law." *Grable*, 545 U.S. at 312. As a result, this Court has subject-matter jurisdiction.

During the January 29, 2013 conference call, counsel for Terna suggested that this Court lacks subject-matter jurisdiction under *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950). That is incorrect. *Skelly Oil* "stand[s] for the proposition that 'if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking.'" *Franchise Tax Bd.*, 463 U.S. at 16 (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2767, at 744-45 (2d ed. 1983)). Ralls is not claiming that the effect of the President's Order is a "defense" to a state contract claim. To the contrary, the President's Order is what *affirmatively* renders the transaction and underlying agreements void *ab initio*. Put differently, in Ralls's complaint, the President's Order is a sword, not a shield. *Skelly Oil* would be applicable if *Terna* sought to bring a state-law action in federal court to enforce the contract, claiming that Ralls would raise the President's Order as a defense to payment. But that is not this case. Instead, Ralls has filed a well-pleaded complaint that "implicate[s] significant federal issues" and involves state-law claims "that nonetheless turn on substantial questions of federal law." *Grable*, 545 U.S. at 312. Accordingly, this Court has federal-question jurisdiction.

## II.      Personal Jurisdiction

This Court also has personal jurisdiction over Terna consistent with due process. "[T]he constitutional touchstone" of the determination whether an exercise of personal jurisdiction comports with due process is "whether the defendant purposefully established 'minimum

contacts' in the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[1]  There must be "some act by

which the defendant purposefully avails itself" of conducting activities within the forum.  *Id.* at

475.   Once such "minimum contacts" are established, a court may assess whether personal

jurisdiction is consistent with "fair play and substantial justice" by examining such factors as

"the burden on the defendant" and "the interstate judicial system's interest in obtaining the most

efficient resolution of controversies."  *Id.* at 476-77 (internal quotation marks omitted).  A court

may assert "general jurisdiction" over a defendant when the defendant's "affiliations with the

State are so 'continuous and systematic' as to render them essentially at home in the forum

State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).  A

court may also assert "specific or case-linked jurisdiction" over a defendant when there has been

an "activity or an occurrence that takes place in the forum State" reflecting a minimum

"affiliation between the forum and the underlying controversy."  *Id.* (brackets and internal

quotation marks omitted).

Terna has purposefully established sufficient "minimum contacts" in the District of

Columbia that personal jurisdiction over it complies with due process.  Terna and Ralls jointly

submitted a voluntary notice to the Washington, D.C.-based Committee on Foreign Investment

in the United States ("CFIUS") regarding Ralls's underlying acquisition of the windfarms.  *See*

Mem. In Support Of Mot. For Temporary Restraining Order And Preliminary Injunction 7-8, Ex.

J, No. 13-117 (D.D.C. Jan. 29, 2013) ("Memorandum in Support").  As the CFIUS statute and

regulations make clear, parties have *no* legal obligation to submit such a notice.  *See* 50 U.S.C.

---

[1] Personal jurisdiction under the forum jurisdiction's long-arm statute must also be satisfied, but the District of Columbia long-arm statute "permit[s] the exercise of personal jurisdiction over nonresident defendants to the extent permitted by the due process clause of the United States Constitution." *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 325-26 (D.C. 2000).

app. § 2170(b)(1)(C); 31 C.F.R. § 800.402 ("[P]arties to a proposed or completed transaction *may* file a voluntary notice of the transaction with the Committee." (emphasis added)). Terna's *voluntary* act of providing that notice accordingly constitutes a clear instance of "purposeful" availment within the jurisdiction of the District of Columbia.

But Terna's contacts with the District of Columbia do not end there. In addition to submitting a voluntary notice, Terna representatives, along with Ralls representatives (including Jialiang Wu, one of Ralls's owners) conducted an in-person meeting with CFIUS representatives in the District of Columbia on July 11, 2012. *See* Memorandum in Support 8-9, Ex. K. At this in-person meeting, Terna and Ralls made a joint presentation to CFIUS regarding the recent transaction. *Id.* On information and belief, moreover, Terna and Ralls representatives discussed the presentation and the Ralls-Terna transaction both before and after the meeting. *See* D.C. Code § 13-423(a)(1) (noting that District of Columbia court "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's … transacting any business in the District of Columbia").[2]

Finally, Terna has advertised the upcoming February 7, 2013 sale of Ralls's collateral (Ralls Wind Farm) in national publications, including the *Wall Street Journal*. Those publications, and thus Terna's advertisements, circulate within the District of Columbia, further establishing Terna's minimum contacts with this forum, particularly in regards to the specific conduct that is the subject of the current suit and motion for temporary injunctive relief. There can be no doubt, moreover, that Terna has selected publications with national scope—including

---

[2] Given the short time allotted for a response to the Court's request for personal jurisdiction briefing, the full nature and extent of these business discussions is not known to Ralls at this time, but is founded upon the reasonable expectation and belief that the parties would discuss the presentation and transaction both before and after the in-person meeting with CFIUS. Ralls can provide further factual information regarding this commercial activity in the coming days, which would be aided by limited discovery into this issue.

reaching into Washington, DC—for its own benefit.  As it admitted on the January 29, 2013

conference call, it advertised in widespread, popular publications (supposedly to the tune of

$75,000 in advertising costs) in order to command the highest price possible for the collateral.

Such intentional conduct reaching into the District of Columbia plainly constitutes the "small

amount of in-jurisdiction business activity" that is "enough to permit the conclusion that a

nonresident defendant has transacted business here."  *Shoppers Food Warehouse v. Moreno*, 746

A.2d 320, 331 (D.C. 2000).  Indeed, in *Moreno*, the D.C. Court of Appeals held that the placing

of advertisements in newspapers reaching into Washington, D.C. constituted the "small amount

of in-jurisdiction business activity" necessary to subject an out-of-jurisdiction defendant to

specific personal jurisdiction.  The advertisements were not "random, fortuitous, accidental or

attenuated"; rather, they constituted "purposeful, affirmative activity within the District of

Columbia."  *Id.*  So too here, further confirming personal jurisdiction over Terna.[3]

        The standards of "fair play and substantial justice" do not militate against personal

jurisdiction over Terna.  Terna itself is a Delaware corporation that is headquartered in

California; as such, there is little to no "burden on the defendant" by litigating in the District of

Columbia as opposed to New York, Terna's apparent preferred forum.  *Burger King*, 471 U.S. at

476-77.  And far from impeding "the interstate judicial system's interest in obtaining the most

efficient resolution of controversies," *id.*, personal jurisdiction over Terna—and this Court's

consideration of the case more generally—bolsters that interest.  Significant judicial efficiencies

are recognized by this Court's hearing this case.  No court is more familiar with the President's

Order, the federal statutes and regulations purportedly underlying that Order, the factual

_____

[3] Terna's advertising of the collateral sale within Washington, DC (in addition to its business discussions with Ralls before and after the July 11, 2012 CFIUS meeting) removes this case from the "government contacts" exception to personal jurisdiction recognized in *Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808 (D.C. 1976).

background concerning the Oregon windfarms, and the arguments that have already been made by Ralls and the government regarding interpretation of the President's Order and related federal law. To ask another court to re-invent the wheel by familiarizing itself with the complicated facts and law underlying the instant dispute—within the time-sensitive context of preliminary injunctive relief, no less—is the furthest thing from the "most efficient resolution of controversies." Accordingly, this Court should not decline to establish personal jurisdiction over Terna.

### III.    Venue

Venue is proper in this Court. A civil action may be brought in a district "in which a substantial part of the events … giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). "Nothing in section 1391(b)(2) mandates that a plaintiff bring suit in the district where the *most substantial* portion of the relevant events occurred, nor does it require a plaintiff to establish that every event that supports an element of a claim occurred in the district where venue is sought." *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 57 (D.D.C. 2006). To the contrary, "a plaintiff need only show that *a* substantial *part* of the events … giving rise to the claim occurred in that district." *Id.* (internal quotation marks omitted); *see also Dooley v. United Techs. Corp.*, 786 F. Supp. 65, 80 (D.D.C. 1992) ("[I]t appears that [section 1391(b)(2)] is intended to place venue within the District of Columbia, even where the case also might be brought in another forum.").

It is indisputable that "a substantial part of the events" giving rise to Ralls's claims in the instant case occurred in the District of Columbia. That is where CFIUS first reviewed the transaction and concluded that it purportedly raises national security risks; that is where representatives from Ralls and Terna met to make a joint presentation to CFIUS concerning the transaction; that is where the President issued his Order prohibiting the underlying transaction

and voiding the transaction and underlying agreements; and that is where Terna has advertised the imminent sale of Ralls's collateral.  What is more, that is where a suit arising out of the same facts and occurrences is currently pending.  Indeed, it is difficult to ascertain a more suitable forum than the District of Columbia for Ralls's claim that an Order of the President of the United States voids the underlying transaction and forestalls Terna's pending sale of the collateral.

Terna has repeatedly stated, including during the January 29, 2013 conference call with the Court, that the underlying agreements specify that all disputes must proceed in New York state or federal courts.  That is a mischaracterization of the agreements, and a critical one.  The Master Wind Projects Membership Interests Purchase Agreement ("MIPSA") and Guarantee Agreements entered into on February 28, 2012 contain a New York forum selection clause.  *See* Memorandum in Support Ex. C § 8.4(d), Ex. D § 11.  Significantly, however, the Security Agreements entered into on March 16, 2012 do not.  Like the MIPSA and Guarantee Agreements, the Security Agreements specify that New York law governs, but in contrast to the MIPSA and Guarantee Agreements, they do *not* specify any particular venue.  *See id.* Ex. F § 24. Given the sophisticated nature of the parties to the agreements, the absence of any forum selection provision in the Security Agreements cannot be brushed aside as a mere oversight. And it is a critical absence for purposes of venue, because Ralls's current action is premised on the unenforceability of the Security Agreements and seeks to enjoin Terna from proceeding with the February 7 sale of collateral pledged under those very Security Agreements.

Were Ralls merely seeking to enforce the MIPSA, Terna's venue argument might have greater force.  But that is not this case.  Indeed, Terna has implicitly conceded that this case does not implicate the MIPSA so much as it directly proceeds under the Security Agreements, because Terna has not sought to invoke the dispute-resolution provisions of the MIPSA.  Those MIPSA

provisions provide that "[i]n the event any dispute, controversy or claim between or among the Parties arises under this Agreement or is connected with or related in any way to this Agreement … any affected party may notify the relevant other Party of the Dispute … that the affected Party has elected to implement the procedures set forth in this [section]."   Ex. C  §  8.4(a).   The "procedures set forth" provide for successive 15-day periods during which representatives of the parties meet and attempt to resolve any disputes under the MIPSA.  *Id.* § 8.4(b)-(c).  Only after a resolution is not reached may the parties proceed to litigation in a New York court.  *Id.* § 8.4(d). Although Terna has been on notice for months of Ralls's position that the President's Order renders the transaction void *ab initio*, Terna has at no point invoked these MIPSA dispute-resolution provisions.   Terna's decision to forgo MIPSA dispute resolution not only demonstrates that Ralls's instant case seeking to stop the collateral sale is properly understood as proceeding under the Security Agreements, and not the MIPSA; it confirms that the MIPSA's forum selection clause—which immediately follows the articulation of these procedures—has no application here.

Respectfully submitted,

  /s/ Viet D. Dinh
Viet D. Dinh (D.C. Bar No. 456608)
Paul D. Clement (D.C. Bar No. 433215)
H. Christopher Bartolomucci (D.C. Bar No. 453423)
George W. Hicks, Jr. (D.C. Bar No. 499223)
BANCROFT PLLC
1919 M Street, N.W., Suite 470
Washington, D.C. 20036
(202) 234-0090

Steven S. Honigman (D.C. Bar No. 201020)
500 East 77th Street
New York, New York 10162
(202) 549-4917

*Counsel for Plaintiff Ralls Corporation*

Dated:  January 29, 2013

9