# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RALLS CORPORATION, | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-117 |
| | ) | |
| TERNA ENERGY USA HOLDING | ) | |
| CORPORATION, | ) | |
| | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF DEFENDANT TERNA ENERGY USA HOLDING
CORPORATION IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT
FOR LACK OF SUBJECT MATTER JURISDICTION AND PERSONAL
JURISDICTION, IMPROPER VENUE, OR, IN THE ALTERNATIVE, MEMORANDUM
IN OPPOSITION TO PLAINTIFF RALLS CORPORATION'S MOTION FOR A
<u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue, 47th floor
New York, New York 10166
Telephone: 212.351.4000
Facsimile:  212.351.4035

GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Attorneys for Defendant Terna Energy USA Holding Corporation*

Washington, D.C.
January 29, 2013

## I.      INTRODUCTION

Ralls' complaint against Terna contravenes the most basic tenets of federal civil procedure.  Ralls does not explain the jurisdictional basis for this procedurally improper suit, which is based upon an "emergency" of Ralls' own creation.  As the principle of federal jurisdiction and the forum selection clause that Ralls negotiated mandate, this suit may only be brought in New York state court.

*First*, this Court lacks subject matter jurisdiction because the action asserts no federal cause of action.  Under the well-pleaded complaint rule, federal question jurisdiction exists only where the action arises under federal law.  Here, the only federal statute that Ralls points to is Section 721 of the Defense Production Act, which Ralls could invoke, if at all, as ***defense*** against a breach of contract suit that could be brought by Terna under New York state law.  But as the Supreme Court has repeatedly explained, where "federal law becomes relevant only by way of a defense to an obligation created entirely by state law," subject matter jurisdiction is lacking. *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9, 17-19 (1983).

*Second*, this Court does not have personal jurisdiction over Terna.  Terna has never conducted any business in the District of Columbia, and has no relevant contacts with the District, let alone sufficient contacts to satisfy the District's long-arm statute or the due process minimums the Supreme Court articulated in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Indeed, the ***only*** contact with the District that Ralls can possibly assert is that Terna jointly signed a submission to a federal agency.  But as this Court and the D.C. Circuit have repeatedly explained, "contact with a federal instrumentality located in the District will not give rise to personal jurisdiction."  *United States v. Ferrara*, 54 F.3d 825, 831 (D.C. Cir. 1995).  Indeed, any contrary rule would "convert the District of Columbia into a national judicial

forum," with jurisdiction over every party that ever communicate with a federal agency. *Id.* That is not the law.

*Third*, venue is improper in this Court because the plain terms of the very agreement that Ralls attempts to invalidate provide—in wholly unambiguous language—that "[e]ach Party hereby submits itself to the exclusive jurisdiction of the state and federal courts located in New York, New York, for the resolution of disputes hereunder." Ralls does not make the extremely demanding showing necessary to overcome the presumption that this forum selection clause is enforceable by its plain terms.

## II.    STATEMENT OF FACTS[1]

Defendant Terna Energy USA Holding Corporation ("Defendant" or "Terna") is a Delaware corporation formed in 2010 to acquire and act as a holding company for wind energy projects in the United States. Terna is a subsidiary of Terna Energy SA, a publicly traded renewable energy company incorporated in Greece and listed on the Athens stock exchange. Terna maintains its principal place of business in the United States in San Francisco, California, which is its only United States location.

Terna is not registered to do business in Washington, D.C. and does not maintain any business operations, property, accounts, facilities, or employees or agents in Washington, D.C. In its entire history, Terna has never engaged in a business transaction in Washington,

---

[1] The Statement of Facts herein contains only those facts relevant to the issues of subject matter jurisdiction, personal jurisdiction, and venue. In the event that the Court requests briefing on the merits, Terna will submit additional relevant facts on the issues of irreparable harm and likelihood of success on the merits at that time. The facts contained herein are derived generally from plaintiff's complaint in this action, and from the contemporaneously filed Declaration of Georgios Angeletos dated January 29, 2013 ("Angeletos Decl."). Unless otherwise noted, "Ex." Refers to the Exhibits appended to Plaintiff's motion for a temporary restraining order and preliminary injunction.

D.C., and has not targeted any business or customers in Washington, D.C.  Terna's business records are created, maintained, and stored in California and Greece, and Terna maintains no records in Washington, D.C.  In short, Terna simply has no connection or contacts to Washington, D.C.

In December 2010, Terna purchased the membership interests in four Oregon windfarm projects, all Oregon limited liability companies: Pine City Windfarm, LLC; Mule Hollow Windfarm, LLC; High Plateau Windfarm, LLC; and Lower Ridge Windfarm, LLC (collectively, the "Oregon Wind Farms").  On February 28, 2012, Terna entered into a transaction in which it sold its membership interests in the Oregon Wind Farms to Intelligent Wind Energy, LLC ("IWE"), a Delaware limited liability company.  The transaction was conducted pursuant to a February 28, 2012 Master Wind Projects Membership Interests Purchase Agreement (the "MIPSA") between Terna, IWE, Ralls Corporation ("Plaintiff" or "Ralls"), and Ralls Wind Farm, LLC ("Ralls Wind Farm"), which was negotiated in San Francisco.  Ex. C.  Pursuant to the MIPSA, the total purchase price of the Oregon Wind Farms was $6 million to be paid in installments, with the final installment of $4.2 million due to Terna on December 21, 2012.  *Id.*  The parties to the MIPSA negotiated for an exclusive jurisdiction clause providing for jurisdiction in the courts of New York.  *Id.* (MIPSA, Section 8.4(d)).

Concurrently with the execution of the MIPSA, on February 28, 2012, Terna entered into Guarantee Agreements with Plaintiff Ralls and Ralls Wind Farm, LLC, (the "Guarantee Agreements") pursuant to which they each guaranteed the obligations of IWE under the MIPSA.  Exs.  D, E.  Section 11 of the Guarantee Agreements provides that Ralls and Ralls

Wind Farm irrevocably submit to the jurisdiction of the state and federal courts of New York. *Id.*

On March 16, 2012, Terna also entered into Security Agreements with IWE, Ralls, and Ralls Wind Farm whereby these parties granted Terna security interests in certain collateral that they owned.  Exs. F, G.  Section 24 of the Security Agreements provides that they "shall be governed by, and construed in accordance with, the laws of the State of New York." *Id.*  Moreover, the Security Agreements expressly reference the MIPSA and the Guarantee Agreements.  For example, Paragraph (5) of the Preliminary Statements to the Security Agreements specifically incorporates the Terms defined in the MIPSA and "the Uniform Commercial Code as in effect from time to time in the State of New York." *Id.* Similarly, Section 2 of the Security Agreements provides that "[t]his Agreement secures all payment and performance obligations of the Purchaser now or hereafter existing under the MIPSA." *Id.* As with the MIPSA, both the Guarantee Agreements and Security Agreements were negotiated in San Francisco.  No negotiations took place in Washington, D.C.

As of March 16, 2012, Terna had fully complied with all of its obligations under the MIPSA, including delivery of its interests in the Oregon Wind Farms to IWE.  After Terna had complied with its obligations, Plaintiff Ralls subsequently acquired the membership interests in the Oregon Wind Farms.

On or about June 13, 2012, over three months after Terna sold the Oregon Wind Farms to IWE, Plaintiff Ralls informed Terna that Ralls had been contacted by the Committee on Foreign Investment in the United States ("CFIUS") with certain questions regarding Plaintiff's acquisition of the Oregon Wind Farms.  Plaintiff Ralls at no time sought CFIUS approval for its purchase of the Oregon Wind Farms or negotiated for a closing

condition providing that the purchaser will not be required to complete the transaction if it does not obtain CFIUS approval in advance of the closing date.  The MIPSA and Guarantee Agreements contained no provision conditioning IWE and Ralls' contractual obligations on ability to obtain CFIUS approval for the Terna-Ralls Transaction.  Indeed, CFIUS approval is nowhere mentioned in any of the MIPSA, Guarantee Agreements, or Security Agreements.

On June 28, 2012, upon counsel for Ralls' request, Terna and Ralls jointly submitted a voluntary notice to CFIUS, through counsel, informing CFIUS of Ralls' acquisition of the Oregon Wind Farms.  No employee of Terna visited Washington, D.C. for the purpose of drafting or submitting the notice to CFIUS.  Terna has had no dealings with CFIUS apart from Ralls' request that Terna join in the June 28, 2012 joint notice to CFIUS described above.

On September 28, 2012, after further correspondence between Plaintiff Ralls and CFIUS, which Terna had no involvement in, President Obama issued an order directed to Ralls.  President Obama's order did not discuss the sale by Terna to IWE, but rather, addressed the subsequent acquisition of the Oregon Wind Farms by Ralls, and ordered Ralls to divest its interest in the Oregon Wind Farms.  President Obama's order made no mention of Terna.

On December 21, 2012, Ralls breached its obligations under the MIPSA and Guarantee Agreements to pay $4.2 million, representing the final installment of the purchase price, to Terna.  On December 24, 2012, Terna served Ralls with a Notice of Default informing Ralls of the breach of its payment obligations pursuant to the MIPSA.  Ralls made no attempt to make payment, or to otherwise cure its breach.  Accordingly, on January 17, 2013, Terna served Ralls with a Notice of Public Sale, disclosing its intent to sell the

membership interests in Ralls Wind Farm, LLC – a second wind farm project owned by Ralls, which Ralls had pledged as collateral underlying its MIPSA payment obligation. Terna began incurring costs for advertising the sale immediately afterward on January 18, 2013.  As of the date of this filing, Terna has incurred over $75,000 in advertising costs.

### III.    ARGUMENT

### A.    THIS COURT LACKS SUBJECT MATTER JURISDICTION

"Federal courts are courts of limited subject-matter jurisdiction." *Micei Int'l v. Department of Commerce*, 613 F.3d 1147, 1151 (2010).  For a case to be heard in federal court, "[t]he Constitution must have given to the court the capacity to take it, ***and an act of Congress must have supplied it***." *Id.* at 1151 (citation omitted; emphasis in original).  It is a "well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction." *C&E Servs., Inc. v. District of Columbia*, 310 F.3d 197, 201 (D.C. Cir. 2002).  Accordingly, a declaratory judgment action must rely upon the Federal Question Statute, 28 U.S.C. § 1331, and satisfy the "'well-pleaded complaint' rule." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9, 17-19 (1983).  Under that rule, if "federal law becomes relevant only by way of a defense to an obligation created entirely by state law," then the federal court lacks subject matter jurisdiction. *Id.* at 13.  "On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." *Physicians Committee for Responsible Medicine v. U.S. E.P.A.*, 451 F.Supp.2d 223, 228 (D.D.C. 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

In the present case, Ralls cannot possible carry its burden of showing that this court has subject matter jurisdiction over its complaint.  Ralls' complaint cites only the Federal Question Statute, 28 U.S.C. § 1331, and the Declaratory Judgment Act, 28 U.S.C. § 2201 (Compl. ¶ 4),

but jurisdiction under both of those provisions is lacking for the same reason:  Under the well-pleaded complaint rule, there must be a relevant federal statute that creates the cause of action on the face of the complaint.  Here, Ralls is seeking to adjudicate a breach of contract question governed by New York law by the plain terms of the contract.  Needless to say, no federal statute authorizes a plaintiff to bring New York breach of contract causes of action in federal court.[2]

That Ralls apparently wishes to argue—as a defense to a breach of contract action that Terna could have brought in New York state court—that the state law contract is "void *ab initio*" due to President Obama's determination pursuant to Section 721 of the Defense Production Act of 1950, as amended, 50 U.S.C. app. § 2170 (Compl. ¶¶ 1, 56), does not grant this Court subject matter jurisdiction over this case.  A ***defense*** establishing that a contract is void *ab initio* would not appear on the fact of any breach of contract complaint filed by Terna, and would instead only be a defense that Ralls could attempt to assert to such a contract claim.  If "federal law becomes relevant ***only by way of a defense to an obligation created entirely by state law***," then the federal court has no subject matter jurisdiction over the dispute.  *Franchise Tax Board*, 463 U.S. 13 (emphasis added); *Merrell Dow Pharmas. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("A defense that raises a federal question is inadequate to confer federal jurisdiction."); *accord* 10A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2767 ("if, but for the availability of the declaratory-

---

[2]   Ralls does not assert subject matter jurisdiction under the Federal Diversity Jurisdiction Statute, 28 U.S.C. § 1332, nor could it, given that both Ralls and Terna are Delaware Corporations.  Compl. ¶¶ 6,7; *see Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) ("The current general-diversity statute, permitting federal district court jurisdiction over suits . . . "between . . . citizens of different States," 28 U.S.C. § 1332(a), thus applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant.").

judgment procedure, the federal claim would arise only as a defense to a state-created action, jurisdiction is lacking.").

Nor does the fact that there is currently pending before this Court an action brought by Ralls seeking to set aside President Obama's determination that Ralls must "divest" itself of Oregon Wind Farms—based upon President Obama's finding that Ralls violated federal law— somehow alter the subject matter jurisdiction analysis in the action at issue here.  Ralls has not invoked the Federal Supplemental Jurisdiction Statute, 28 U.S.C. § 1367.  And, in any event, the existence of Ralls' separate suit against President Obama cannot create jurisdiction for the present, separate action because "supplemental jurisdiction does not—and cannot—operate to get *a case*"—as opposed to a claim into an already jurisdictionally proper case—"into federal court."  Wright & Miller § 3567 (emphasis added).  Ralls has not invoked any "independent basis of federal subject matter jurisdiction" (*Women Prisoners of DC Department of Corrections v. District of Columbia*, 93 F.3d 910, 920 (D.C. Cir. 1996)) for the present action, and thus the existence of another suit that is ***arguably***[3] jurisdictionally proper cannot possibly create subject matter jurisdiction over the present case.  *See Siegel v. Consolidated Edison, Inc.*, 318 F. Supp. 2d 176, 179 (S.D.N.Y. 2004) (pending case cannot support jurisdiction "over a new, independent, and freestanding civil action.").

## B.	THIS COURT LACKS PERSONAL JURISDICTION

A federal court had jurisdiction over a defendant only where jurisdiction "is proper under the applicable local long-arm statute," and where assertion of jurisdiction would comport with

---

[3]	Terna takes no position on the motion to dismiss Ralls' suit against President Obama on jurisdictional grounds.  To the extent that the Court grants that motion, it further weakens Ralls' claim to jurisdiction in this Court.

8

the "demands of due process"—namely "'minimum contacts' between the defendant and the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"   *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "As there is no applicable federal long-arm statute, jurisdiction over [the Defendant] must be determined by reference to District of Columbia law" and its long-arm statutes, D.C. Code Ann. § 13-423.   *Id.*   In order to establish jurisdiction under Section 13-423 under District of Columbia law, Ralls would need to demonstrate that its "claim for relief aros[e]" out of—for example—Terna's "transacting any business in the District of Columbia."  It is Ralls's "burden" to make a "*prima facie* showing" of personal jurisdiction.  *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) (quotation marks and citations omitted); *F.T.C. v. Graco Inc.*, No. 11-CV-02239 RLW, 2012 WL 3584683, at *1 (D.D.C. Jan. 26, 2012); *see also Gouveia v. Corr. Corp. of Am.*, No. 2:08CV23-M-B, 2008 WL 2149376, at *2 (N.D. Miss. May 20, 2008) (dismissing TRO motion when the plaintiff had "not made any allegation" that would establish personal jurisdiction); *Brooke Credit Corp. v. Lobell-Dixon Ins. Agency, LLC*, No. 06-2510 CM, 2006 WL 3792108, at *4 (D. Kan. Dec. 21, 2006) (similar).[4]

---

[4]   A District of Columbia court could also exercise **general** personal jurisdiction over a person for all purposes, pursuant to D.C. Code Ann. § 13-422, "over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief" (*id.*), or, pursuant to D.C. Code Ann. § 13-424's "doing business" provision, where the person "carries on a consistent pattern of regular business activity."   *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850 (D.C. 1981) (*per curiam*).  Here, there is plainly no general personal jurisdiction over Terna given that Rallss' complaint accurately states that the Defendant is a "Delaware corporation with its principal place of business in California" (Compl. ¶ 7), and Terna has not conducted any business activities in the District of Columbia, let alone "consistent pattern of regular business activity."

In their complaint , Plaintiffs do not mention the requirements of personal jurisdiction, let alone attempt to carry their burden to demonstrate that this court has personal jurisdiction. Indeed, Ralls does not even suggest which provision of the D.C. long-arm statute could possibly apply to the Defendant's contract at issue here.  Ralls' default on this issue flows directly from the obvious fact that no personal jurisdiction exists.  Terna has not "transact[ed] any business" in the District of Columbia, and certainly not any business relating to "claim for relief" at issue in this case.  *Willis v. Willis*, 655 F.2d 1333, 1336 (D.C. Cir. 1976) ("The District of Columbia courts have interpreted section 13-423(b) as a bar to claims unrelated to the acts forming the basis for personal jurisdiction.").   The contract here was negotiated between two Delaware corporations, and relates to an Oregon wind farm, with the relevant collateral being a Texas wind farm.  *See* Declaration of Georgios Angeletos ¶¶ 14-18.  This is plainly insufficient to satisfy the requirements of the D.C. long-arm statute.  For much the same reasons, it is insufficient to satisfy the constitutional prerequisites of due process, as Ralls does not allege that Terna had any relevant contacts with the District of Columbia, let alone sufficient "minimum contacts" to satisfy the constitutional minimum articulated in *International Shoe*.  *Ferrara*, 54 F.3d at 829-31.

Nor does the fact that the Defendant joined Ralls' joint presentation to CFIUS—a federal agency—alter the personal jurisdiction analysis.  As this court has explained, "[t]he scope of its otherwise broad 'transacting any business' clause [in the D.C. long arm statute] ***is limited by the rule that contact with a federal instrumentality located in the District will not give rise to personal jurisdiction***."   *Id.* at 831 (emphasis added).   This rule is sensible—indeed, constitutionally and practically mandated—because, "[a]s the Court of Appeals for the District of Columbia has noted, '[t]o permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality ***not only***

*would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum*.'"  *Id.* (quoting *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,* 355 A.2d 808, 813 (D.C. 1976) (*en banc*)) (emphasis added); *accord Brunson v. Kalil & Co., Inc.*, 404 F. Supp. 2d 221, 235 (D.D.C. 2005) ("[t]he District of Columbia's unique character as the home of the federal government requires this exception in order to maintain unobstructed access to the instrumentalities of the federal government.").

In light of these principles, the D.C. Circuit and this Court have consistently held that submitting a request to a federal agency—which is the only contact with the District of Columbia that Ralls alleges Terna engaged in here—is insufficient to establish personal jurisdiction as a matter of law.  *Ferrara*, 54 F.3d at 831 (no personal jurisdiction based upon the defendant submitting a letter to a D.C.-based federal official regarding the subject matter of the lawsuit); *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 44-45 (D.D.C. 2003) (no personal jurisdiction based upon the defendant filing documents with FERC, documents which were the subject matter of the suit, and maintaining an office in the District of Columbia whose "sole function is to work with the FERC and other regulatory agencies, and with members of Congress and congressional committees, in connection with federal regulatory and legislative matters"); *Freiman v. Lazur*, 925 F. Supp. 14, 24 (D.D.C. 1996) (no personal jurisdiction based upon the defendant filing copyright registration for computer program at issue in the lawsuit "at the U.S. Copyright Office in Washington, D.C."); *see also Brunson v. Kalil & Co., Inc.*, 404 F. Supp. 2d 221, 235 (D.D.C. 2005) (no personal jurisdiction based upon an allegation that the defendant "often comes to the District of Columbia for meetings in the course of its business and to access filings with the Federal

Communications Commissions and possibly the Securities and Exchanges Commission relevant to its general business" is insufficient).

## C.     THE DISTRICT OF COLUMBIA IS NOT THE PROPER VENUE

"Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). This rule has special force "where the plaintiff has agreed to venue elsewhere under a forum selection clause." *Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 126 (D.D.C. 2008). The D.C. Circuit has held that "forum-selection clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Commerce Consultants Int'l v. Vetrerie Riunite*, 867 F.2d 697, 699 (D.C. Cir. 1989) (internal punctuation omitted). And when venue is improper, a TRO must be denied. *See Crenshaw v. Antokol*, 238 F. Supp. 2d 107, 108 (D.D.C. 2002). "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003).

In the present case, MIPSA provides for exclusive jurisdiction in the courts of New York. That provision states, in no uncertain terms, that "[t]his Agreement and the rights and duties of the Parties arising out of this Agreement shall be governed by, and construed in accordance with, the laws of the State of New York. Each Party ***hereby submits itself to the exclusive jurisdiction of the state and federal courts located in New York, New York, for the resolution of disputes hereunder and waives its right to trial by jury***." *See* MIPSA

§ 8.4(d).[5]   The D.C. Circuit has held that a clause similarly providing for "exclusive jurisdiction" in another court precludes venue in the United States District Court for the District of Columbia.  *See Society of Lloyd's v. Siemon-Netto*, 457 F.3d 94, 104-05 (D.C. Cir. 2006).   That the Security Agreement itself has no forum selection clause is wholly immaterial because Ralls' argument is that entirety of the MIPSA—which necessarily subsumes the Security Agreement, which only comes into effect in case of a breach of the MIPSA by Ralls—contains a forum selection clause, choosing New York state as the proper forum.  Indeed, Ralls' complaint seeks a declaration relating to the termination of the entire "transaction" between the parties, including "an order and judgment declaring that because the transaction resulting in the acquisition of the Project Companies by Ralls from Terna is void *ab initio*, the MIPSA is terminated."   Compl., Prayer For Relief.   That request for relief—which is the gravamen of Ralls' complaint—is plainly subject to the MIPSA's forum selection clause.[6]

In its complaint, Ralls does not acknowledge—let alone attempt to rebut—the strong presumption that "forum-selection clauses are *prima facie* valid and should be enforced." *Commerce Consultants*, 867 F.2d at 699.  Indeed, Ralls does nothing beyond pointing to the

---

[5]   The Guarantee Agreements that the parties entered into has similarly unambiguous forum selection clause.  Guarantee Agreements § 11 ("The Guarantor hereby irrevocably submits to the jurisdiction of any New York State or Federal court sitting in New York City and any appellate court from any thereof in any action or proceeding arising out or relating to this Guarantee, and the Guarantor hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such New York State court or in such Federal court.   The Guarantor hereby irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such proceeding.").

[6]   Indeed, even if Ralls is correct that the rest of the MIPSA is void, the forum-selection clause would still apply and be enforceable.  *See Marra v. Papandreou*, 216 F.3d 1119, 1125-26 (D.C. Cir. 2000).

Federal Choice of Venue Provision, 28 U.S.C. § 1391(b).  Compl. ¶ 4.  In the present action, the suit is indisputably governed by New York law, and the parties do not conduct any relevant business in the District of Columbia, and did not enter into the relevant transaction in the District.  Indeed, the *only* connection between the District and this suit is that Ralls unilaterally chose this Court to bring a separate action, relating to a separate contract, against President Obama.  Such a tangential connection would be insufficient to provide for proper venue in the District even without any forum selection clause.  And it certainly cannot overcome the strong presumption of enforceability that those clauses enjoy in this court.

## IV.    CONCLUSION

For the foregoing reasons, Terna's motion to dismiss the Complaint should be granted. In the alternative, the court should deny Ralls Corporation's motion for a temporary restraining order and preliminary injunction.

Respectfully submitted this 29th day of January, 2013.

>     /s/ Howard S. Hogan
> Howard S. Hogan (D.C. Bar No. 492002)
> F. Joseph Warin (D.C. Bar No. 235978)
> GIBSON, DUNN & CRUTCHER LLP
> 1050 Connecticut Avenue, N.W.
> Washington, DC  11101
> Telephone: 202.955.8500
> Facsimile:  202.467.0539
>
> Robert Weigel (N.Y. Bar. No. 1809284)
> (*pro hac vice* application pending)
> GIBSON, DUNN & CRUTCHER, LLP
> 200 Park Avenue, 47th floor
> New York, New York 10166
> Telephone: 212.351.4000
> Facsimile:  212.351.4035
>
> *Attorneys for Defendant Terna Energy USA*
> *Holding Corporation*

14

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that true and accurate copies of the foregoing

MOTION TO DISMISS AND COMBINED MEMORADUM IN SUPPORT OF MOTION TO

DISMISS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY

RESTRAINING ORDER were served by First-Class United States Mail this 29th day of January

2013, upon the following:


Viet D. Dinh                                      Stephen S. Honigman
Paul D. Clement                                   500 East 77th Street
H. Christopher Bartolomucci                       New York, New York 10162
George W. Hicks, Jr.                              Tel  (202) 549-4917
BANCROFT PLLC
1919 M Street, N.W., Suite 470
Washington, D.C. 20036
Tel  (202) 234-0090

*Attorneys for Plaintiff Ralls Corporation*




I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 29, 2013.                    Respectfully submitted,

                                                   /s/ Howard S. Hogan
                                                 Howard S. Hogan (D.C. Bar No. 492002)
                                                 Robert Weigel (New York Bar. No.
                                                 1809284)
                                                 GIBSON, DUNN & CRUTCHER LLP
                                                 1050 Connecticut Avenue, N.W.
                                                 Washington, DC  11101
                                                 Telephone: 202.955.8500
                                                 Facsimile:     202.467.0539
                                                 *Counsel for Defendant Terna Energy USA*
                                                 *Holding Corporation*

1