IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RALLS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> TERNA ENERGY USA HOLDING CORPORATION, <br><br> Defendant. | Civil Action No. 13-117 |

## DECLARATION OF GEORGIOS ANGELETOS

I, Georgios Angeletos, declare under penalty of perjury that the following is true and accurate to the best of my knowledge, information, and belief:

1. I am over 18 years of age, am competent to testify about the matters set forth herein, and submit the testimony below based upon personal knowledge and information.

2. I am the Secretary of Terna Energy USA Holding Corporation ("Terna"). As Secretary, I have knowledge of Terna's history, business practices, facilities, work force, and commercial relationships.

3. Terna is a Delaware corporation, with its principal place of business in California. Terna is a subsidiary of Terna Energy SA, a publicly traded company incorporated in Greece.

4. Terna's only United States offices are located in California.

5. Terna does not maintain any properties, offices, facilities, warehouses, computers, or computer networks in Washington, D.C. and is not registered to do business in Washington, D.C.

6. Terna does not have a mailing address, telephone number, taxpayer identification number, inventory, bank account, real estate, personal property, or employees or agents in Washington, D.C.

7. Terna has at no time engaged in any business transaction in Washington, D.C. Terna does not have any ongoing licensing, supply, or sales relationships with any individuals or companies located in Washington, D.C. Terna does not specifically target any business or customers located in Washington, D.C. Terna has not conducted any contract negotiations in Washington, D.C. Terna's only regular business transactions, conduct, and deriving of revenue occur outside of Washington, D.C.

8. Terna's business records are created, maintained, and stored in California or in Greece. Terna does not maintain any records in Washington, D.C.

9. On February 28, 2012, Terna entered into a transaction in which it sold membership interests in four Oregon wind farms to Intelligent Wind Energy, LLC ("IWE"), a Delaware LLC. The transaction was governed by the Membership Interests Purchase Agreement ("MIPSA") between Terna, IWE, Ralls Corporation ("Ralls"), and Ralls Wind Farm, LLC ("Ralls Wind Farm") dated February 28, 2012.

10. Pursuant to the MIPSA, the total purchase price of the transaction was $6 million, to be paid in installments. The final installment of $4.2 million was due to Terna on December 21, 2012.

11. Section 8.4(d) of the MIPSA provides for exclusive jurisdiction in the courts of New York. The provision reads: "This Agreement and the rights and duties of the Parties arising out of this Agreement shall be governed by, and construed in accordance with, the laws of the State of New York. Each Party hereby submits itself to the exclusive jurisdiction of the state and federal courts located in New York, New York, for the resolution of disputes hereunder and waives its right to trial by jury."

12. Concurrently with execution of the MIPSA, on February 28, 2012, Terna entered into Guarantee Agreements with Ralls and Ralls Wind Farm dated February 28, 2012 whereby Ralls and Ralls Wind Farm absolutely, unconditionally and irrevocably guaranteed to Terna IWE's payment obligations under the MIPSA.

13. Section 11 of the Guarantee Agreements provides for jurisdiction in the courts of New York. The provision reads: "The Guarantor hereby irrevocably submits to the jurisdiction of any New York State or Federal court sitting in New York City and any appellate court from any thereof in any action or proceeding arising out or relating to this Guarantee, and the Guarantor hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such New York State court or in such Federal court. The Guarantor hereby irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such proceeding."

14. On March 16, 2012, Terna entered into Security Agreements with IWE, Ralls, and Ralls Wind Farm whereby IWE, Ralls, and Ralls Wind Farm granted security interests in certain collateral in favor of Terna. Section 24 of the Security Agreements provides that the Agreements "shall be governed by, and construed in accordance with, the laws of the State of New York."

The Security Agreements expressly reference the MIPSA and the Guarantee Agreements. For example, Paragraph (5) of the Preliminary Statements to the Security Agreements specifically incorporate the Terms defined in the MIPSA and "the Uniform Commercial Code as in effect from time to time in the State of New York." Similarly, Section 2 of the Security Agreements provides that "[t]his Agreement secures all payment and performance obligations of the Purchaser now or hereafter existing under the MIPSA." As a result, it makes no sense to construe the Security Agreements as allowing a different forum choice than that set forth in the MIPSA and the Guarantee Agreements.

15. The MIPSA, Guarantee Agreements, and Security Agreements were negotiated in San Francisco.

16. None of the MIPSA, Guarantee Agreements, and Security Agreements were negotiated or signed in Washington, D.C.

17. On or about June 13, 2012, Ralls informed Terna that Ralls had been contacted by the Committee on Foreign Investment in the United States ("CFIUS"). Upon Ralls' request, on June 28, 2012, Terna and Ralls submitted a voluntary notice to CFIUS, through counsel.

18. No employee of Terna visited Washington, D.C. for the purpose of drafting or submitting the notice to CFIUS. Terna has had no dealings with CFIUS apart from Ralls' request that Terna join in the June 28, 2012 joint notice to CFIUS described above.

19. On December 21, 2012, Ralls breached its obligations under the MIPSA and Guarantee Agreements to pay $4.2 million, representing the final installment of the purchase price, to Terna.

20. On December 24, 2012, Terna served Ralls with a Notice of Default informing Ralls that it had breached its payment obligations pursuant to the MIPSA.

21. On January 17, 2013, Terna served Ralls with a Notice of Public Sale, notifying Ralls of its intention to sell the membership interests in Ralls Wind Farm, LLC, which Ralls had pledged as collateral underlying its payment obligation.

22. On January 18, 2013, Terna began incurring costs of advertising the sale of the membership interests in Ralls Wind Farm, LLC, and to this date, has incurred over $75,000 in costs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 29 day of January 2013.

_____
Georgios Angeletos