UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
RALLS CORPORATION,                  )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   Civil Action No. 13-0117 (ABJ)
                                    )
TERNA ENERGY USA HOLDING            )
CORPORATION,                        )
                                    )
            Defendant.              )
_____ )

## MEMORANDUM OPINION

Defendant Terna Energy USA Holding Corporation ("Terna") moves to dismiss plaintiff Ralls Corporation's ("Ralls") complaint for lack of personal jurisdiction, improper venue, and lack of subject matter jurisdiction.[1]  Upon consideration of the parties' briefs, the record in this case, and the applicable law, the Court will grant the motion to dismiss for lack of personal jurisdiction and improper venue.  It does not reach the question of subject matter jurisdiction.

---

1   Ralls filed its complaint and motion for temporary restraining order and preliminary injunction on January 28, 2013.  Compl. for Decl. and Inj. Relief ("Compl.") [Dkt. # 1]; Mot. for TRO and Prelim. Inj. ("Ralls' Mot.") [Dkt. # 4].  The court held a conference call with counsel for the parties on January 29, 2013, in which Terna raised its concerns regarding jurisdiction and venue.  The Court requested briefs from the parties solely on those issues by 5:00 p.m. that day.  Pl.'s Br. on Juris. and Venue in Supp. of Mot. for TRO and Prelim. Inj. ("Ralls' Br.") [Dkt. # 5]; Mot. of Def. to Dismiss the Compl. for Lack of Pers. Juris., Improp. Venue, and Lack of Subject Matter Juris. ("Terna's Mot.") [Dkt. # 7]; Mem. of Def. in Supp. of its Mot. to Dismiss. ("Terna's Br.") [Dkt. # 8]; Decl. of Georgios Angeletos ("Angeletos Decl.") [Dkt. # 9].

## BACKGROUND

This dispute concerns Ralls' purchase of wind farms located in Oregon from Terna. The transaction was structured as a two-tier transaction involving four entities: Terna, Ralls, Intelligent Wind Energy, LLC ("IWE"), and Ralls Wind Farm, LLC. Decl. of Jialiang Wu, Ex. B. to Ralls' Mot. ("Wu Decl.") ¶ 6–7. Terna is a Delaware corporation with its principal place of business in California and is a subsidiary of Terna Energy SA, a publically traded company in Greece. Angeletos Decl. ¶ 3. Terna has offices in California but maintains no offices, facilities, employees or other business-related infrastructure in the District of Columbia, nor has it engaged in any business transactions in the District. *Id.* ¶¶ 4–8. Ralls is a Delaware corporation with its principal place of business in Georgia. Wu Decl. ¶ 3.

On February 28, 2012, the four entities to the transaction entered into a Master Wind Projects Memberships Interests Purchase Agreement ("MIPSA"), in which Ralls agreed to purchase the Oregon wind farms for $6 million. Angeletos Decl. ¶¶ 9–10. Under the MIPSA, the final payment of $4.2 million of the purchase price was due on December 21, 2012. *Id.* ¶ 10. On February 28, 2012, the entities also entered into Guarantee Agreements in which they guaranteed the obligations of IWE under the MIPSA. *Id.* ¶ 12. Finally, on March 16, 2012, the parties entered into Security Agreements in which IWE, Ralls, and Ralls Wind Farm granted to Terna a security interest in assets owned by Ralls Wind Farm as collateral for the transaction. *Id.* ¶ 14. These assets are located in Ralls, Texas. Wu. Decl. ¶ 11. The parties negotiated their transaction outside the District of Columbia. Angeletos Decl. ¶ 15.

Both the MIPSA and the Guarantee Agreements contain forum selection clauses that identify New York, New York as the jurisdiction in which disputes concerning these agreements would be resolved. MIPSA, Ex. C to Ralls' Mot. at § 8.4 (d); Guarantee Agreements, Ex. D to

Ralls' Mot. at § 11, Ex. F to Rall's Mot. at § 11.  The Security Agreements, which secure "all payment and performance obligations of the Purchaser now or hereafter existing under the MIPSA," do not contain a forum selection clause, though they expressly reference the MIPSA and the Guarantee Agreement.  Security Agreements, Ex. F to Ralls' Mot. at 4, Ex. G to Ralls' Mot. at 4, Ex. H to Ralls' Mot. at 4.

In June of 2012, Ralls informed Terna that Ralls had been contacted by the Committee on Foreign Investment in the United States ("CFIUS") regarding Ralls' purchase of the Oregon wind farms.  Angeletos Decl. ¶ 17.  In response to the inquiry from CFIUS, Ralls and Terna submitted a voluntary notice to CFIUS about the wind farm transaction on June 28, 2012.  *Id.* ¶ 17; Ex. J to Ralls' Mot.  On September 28, 2012, the President of the United States entered an "Order Regarding the Acquisition of Four U.S. Wind Farm Project Companies by Ralls Corporation."  Ex. N to Ralls' Mot.  The President's Order stated that the transaction between Ralls and Terna "is hereby prohibited" and ordered Ralls to "divest all interests" in the Oregon wind farms within 90 days of the order.[2]  *Id*. at 1–2.

On October 2, 2012, Ralls informed Terna of the President's order, asserting that as a result of the order, the parties' transaction was void *ab initio*.  Compl. ¶ 43; Ex. O to Ralls' Mot.  Ralls stated that given this, ownership of the Oregon wind farms remained with Terna, and Ralls demanded that Terna repay the money it had paid so far under the MIPSA.  *Id.*  On December 24, 2012, Terna notified Ralls that it was in default for failing to make the final installment payment due on December 21, 2012, stating that if Ralls did not make the payment within 14 days, it would exercise its rights under the parties' agreements by selling the collateral that Ralls had provided to Terna.  Compl. ¶ 48; Ex. V of Ralls' Mot.  Terna rejected Ralls' position that

---

2   Ralls has filed suit challenging the President's Order as unconstitutional.  *Ralls Corporation v. Obama*, Case No. 1:12-cv-01513-ABJ.  That case is pending before this Court.

their transaction was void *ab initio* and, on January 17, 2013, notified Ralls that it would hold a public sale of the collateral pledged under the Security Agreements. *Id.* ¶¶ 51–52; Ex. AA to Ralls' Mot. On January 18, 2013, Terna began the process of advertising the collateral for sale. Angeletos Decl. ¶ 22. According to Ralls, this advertising included advertisements in the *Wall Street Journal*. Ralls' Br. at 5. The public sale is scheduled for February 7, 2013. Ralls' Mot. at 1.

On January 28, 2013, Ralls filed its complaint and motion for temporary restraining order and preliminary injunction, seeking to halt the public sale. On January 29, 2013, Terna filed its motion to dismiss for lack of personal jurisdiction, improper venue, and lack of subject matter jurisdiction.

## ANALYSIS

**I.     Personal Jurisdiction**

The plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). To survive a motion to dismiss for lack of personal jurisdiction, the "plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts." *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). To establish that personal jurisdiction exists, the plaintiff must allege specific acts connecting the defendant with the forum. *In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 97–98 (D.D.C. 2008), citing *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). The plaintiff "cannot rely on conclusory allegations" to establish personal jurisdiction. *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).

"A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of . . . personal jurisdiction[.]" *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002). However, "the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial; rather, [the plaintiff] may rest [its] arguments on the pleadings, 'bolstered by such affidavits and other written materials as [it] can otherwise obtain.'" *Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010), quoting *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). Any factual discrepancies should be resolved in favor of the plaintiff. *Crane*, 894 F.2d at 456. But the Court need not treat all of the plaintiff's jurisdictional allegations as true. *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000). "Instead, the court may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *In re Papst Licensing*, 590 F. Supp. 2d at 98 (internal quotation marks omitted).

For the Court to exercise personal jurisdiction over an entity, the entity must maintain contacts with the District of Columbia sufficient to support either general jurisdiction or specific jurisdiction under the District of Columbia's long-arm statute, D.C. Code § 13-423 (2001).[3] *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). "To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry . . . ." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d. 1343, 1347 (D.C. Cir. 2000). It first determines "whether jurisdiction over a party is proper under the applicable local long-arm statute." *United States v. Ferrara,* 54 F.3d. 825, 828 (D.C. Cir. 1995). If so, it examines "whether [jurisdiction] accords with the demands of due process." *Id*. The D.C. long-arm statute provides personal jurisdiction over a person, "who acts directly or by an agent, as to a

---

3   Because Ralls does not argue that the Court has general jurisdiction over Terna, the Court limits its analysis of this issue under specific jurisdiction.

claim for relief arising from" the person "transacting any business in the District of Columbia," among other reasons. D.C. Code § 13-423.

Ralls argues that the Court has personal jurisdiction over Terna (a) because Terna submitted a joint voluntary notice with Ralls to CFIUS regarding their wind farms transaction and met with CFIUS officials about the notice, and (b) because it advertised the sale of the Ralls collateral in national publications, including the *Wall Street Journal*. Ralls' Br. at 4–5. Neither argument prevails. First, as Ralls acknowledges, there is a government contacts exception to personal jurisdiction. Ralls' Br. at 6 n.3, citing *Envtl. Research Int'l v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808 (D.C. 1976). Under the District of Columbia long-arm statute, contact with a federal instrumentality located in the District will not give rise to personal jurisdiction. *Ferrara*, 54 F.3d at 831.

> To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum.

*Id.*, quoting *Envtl. Research,* 355 A.2d at 813. "The District of Columbia's unique character as the home of the federal government requires this exception in order to maintain unobstructed access to the instrumentalities of the federal government." *Brunson v. Kalil & Co., Inc.*, 404 F. Supp. 2d 221, 235 (D.D.C. 2005).

It is undisputed that Terna and Ralls made a joint submission to CFIUS about the transaction and that representatives for the parties attended a meeting with CFIUS in the District. Angeletos Decl. ¶¶ 16–17; Ralls' Br. at 5.[4] But submitting documents to and meeting with government officials in the District does not establish personal jurisdiction. *See Brunson v.*

---

4   In oral argument, counsel for Terna stated that an attorney for Terna attended the meeting.

*Kalil & Co.,* 404 F. Supp. 2d at 235 (finding no personal jurisdiction based on an allegation that the defendant "often comes to the District of Columbia for meetings in the course of its business and to access filings with the Federal Communications Commissions and possibly the Securities and Exchanges Commission relevant to its general business"); *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 44–45 (D.D.C. 2003) (finding no personal jurisdiction based on the defendant filing documents with FERC and maintaining an office in the District of Columbia whose "sole function is to work with the FERC and other regulatory agencies, and with members of Congress and congressional committees, in connection with federal regulatory and legislative matters").

Recognizing the government contacts exception to personal jurisdiction exists, Ralls also argues that the Court has personal jurisdiction over Terna because Terna advertised the sale of Ralls' collateral in national newspapers, including the *Wall Street Journal*. Ralls cites a D.C. Court of Appeals case, *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320 (D.C. 2000) in support of its argument. But that case involved a nonresident grocery store company hailed into the courts of the District after one it is customers, a D.C. resident, slipped and fell at one of the defendant's stores in Takoma Park, Maryland. The D.C. Court of Appeals found that the grocery store had minimum contacts with the District, in part because it placed advertisements in the *Washington Post*, "the District's major circulation newspaper." *Id.* at 331. The defendant's "extensive advertising activity in a major District of Columbia newspaper, purposefully solicited District residents as customers for its nearby Maryland and Virginia stores and thus transacted business in the District." *Id.* at 322. That is not what happened here.

The *Wall Street Journal* – although circulated nationwide and, indeed, globally – is not a newspaper of the District of Columbia. Terna's advertisement of the public sale in a national

7

newspaper is not an advertisement placed specifically in the forum's local paper, but an advertisement placed in a national newspaper that happens to circulate in the forum. Given this, Terna's advertisement did not purposefully solicit the interest of District residents or businesses, as the defendant did in *Shoppers Food Warehouse*. Placing an advertisement in a national paper that circulates in the District of Columbia does not target District residents or businesses and does not give this Court personal jurisdiction over Terna. *See Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 117 (D.D.C. 2011) (holding that the court had no personal jurisdiction over a German corporation because, even if it issued press releases in the District of Columbia, "it did not actively advertise in the District of Columbia, either on its website or through local newspapers, nor did the press releases specifically target District of Columbia residents as opposed to potential customers located elsewhere in the United States and around the world.").

The Court holds Terna's communications with CFIUS and its advertisement in national newspapers to sell Ralls' collateral does not establish the required minimum contacts with the District to give this Court personal jurisdiction over Terna.

**II.    Venue**

Terna also contends that venue in this Court is improper because the parties agreed that the jurisdiction of disputes under their agreements would be in New York, New York. Terna's Br. at 12–14. The MIPSA and the Guarantee Agreements expressly state that New York would be the jurisdiction for disputes under those agreements, and the Security Agreements, which have no venue provision, nonetheless reference both the MIPSA and Guarantee Agreements. Ralls argues that venue is proper in this jurisdiction regardless of the venue provisions in the MIPSA and Guarantee Agreements because a substantial part of the events giving rise to its claim occurred in the District and because the Security Agreements do not specify a particular venue. Ralls' Br. at 7–8.

The D.C. Circuit has held that "forum-selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Commerce Consultants Int'l, Inc. v. Vetrerie Riunite, S.p.A.*, 867 F.2d 699, (D.C. Cir. 1989) (internal punctuation omitted). Although the Security Agreements do not themselves contain a forum selection clause like the MIPSA and Guarantee Agreements, the express purpose of the Security Agreements is to secure "all payment and performance obligations of the Purchaser now or hereafter existing under the MIPSA." Ex. F to Ralls' Mot. at 4; Ex. G to Ralls' Mot. at 4; Ex. H to Ralls' Mot. at 4. Without the MIPSA, there would be no need for the Security Agreements. Further, Ralls' own complaint seeks a declaration that the entire transaction, not just the Security Agreements, is void *ab initio*. Compl. at 1. Accordingly, it would be unreasonable to recognize the parties' forum selection clauses in the MIPSA and the Guarantee Agreements but ignore them in applying the Security Agreements, which only exist because of and are integral to the transaction.

Further, Ralls' argument that a substantial part of the events giving rise to its claim occurred in the District is not persuasive. The parties to this transaction are not located in the District, they did not negotiate their transaction in the District, nor are any of the assets at issue located in the District. It is true that the President, who is located in the District, issued an order affecting their contract. But the issuance of that order does not constitute a substantial part of the events giving rise to Ralls' claim, which involves the rights and responsibilities of the parties under their contracts. Accordingly, the Court holds that it is reasonable to apply the parties' forum selection clauses to the Security Agreements and that venue in this jurisdiction is improper.

## CONCLUSION

For the foregoing reasons, Terna's motion to dismiss will be GRANTED and the case will be DISMISSED without prejudice.

An Order shall issue with this opinion.

Signed by Royce C. Lamberth, Chief Judge, on January 31, 2013.